UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------

SHATASHA BROWN, formerly known as
Shatasha Wright,

                    Plaintiff,

      -vs-                            6:10-CV-1539

THE CITY OF UTICA, NEW YORK; PETER
PALADINO, Individually and as a police officer
of the City of Utica, New York; and ANTHONY
STUCCHI, Individually and as a parole officer
of the Division of Parole of the State of New
York,

                      Defendants.
--------------------------------

APR 1 2 2012

LAWRENCE K. BAERMAN Clerk
UTICA

APPEARANCES:

STEPHEN L. LOCKWOOD, P.C.
Attorneys for Plaintiff
285 Genesee Street
Utica, NY 13501

OFFICE OF CORPORATION COUNSEL—
   CITY OF UTICA
Attorneys for the Defendants City of Utica
   and Peter Paladino
One Kennedy Plaza
Utica, NY 13502

HON. ERIC T. SCHNEIDERMAN
Attorney General for the State of New York
Attorney for Defendant Anthony Stucchi
The Capitol
Albany, NY 12224

OF COUNSEL:

DANIEL N. CAFRUNY, ESQ.

JOHN P. ORILIO, ESQ.
Ass't Corporation Counsel

ROGER W. KINSEY, ESQ.
Ass't Attorney General

DAVID N. HURD
United States District Judge

**MEMORANDUM–DECISION and ORDER**

## I. INTRODUCTION

Plaintiff Shatasha Brown ("plaintiff" or "Brown") filed this civil rights action on December 20, 2010. She filed an amended complaint on July 6, 2011, against defendants the City of Utica ("Utica"); Utica police investigator Peter Paladino ("Paladino"); and New York state parole officer Anthony Stucchi ("Stucchi") (collectively "defendants").[1] Plaintiff asserts various federal and pendent state claims arising from several interactions with Stucchi and officers of the Utica Police Department ("UPD") between January 2010 and March 2011.

Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes, and defendants have replied to this opposition. Oral argument was heard on March 23, 2012, in Utica, New York. Decision was reserved.

## II. FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed. Brown is an African–American female. In January 2010 she lived with her fiance, Jesse Brown ("Jesse"), on Steuben Street in Utica, New York.[2] Jesse was a state parolee under Stucchi's supervision. At approximately 11:40 a.m. on January 6, 2010, a confidential informant conducted a controlled purchase of cocaine from Jesse in the driveway of Jesse's Steuben Street home. Based, in part, on this information, Paladino obtained a search warrant for Jesse, his residence, and "any other person who may be found to have [drug paraphernalia] in his

---

[1] Plaintiff also named Utica police officer Michael Curley as a defendant in the amended complaint but voluntarily dismissed him by stipulation on September 30, 2011.

[2] Plaintiff and Jesse were married on February 18, 2010.

possession or under his control at the time of the execution of said warrant." Cafruny Affirmation, Feb. 14, 2012, Ex. K, ¶ C.

At approximately 2:30 p.m. that same day, Stucchi and several UPD officers, including Paladino, arrived at plaintiff and Jesse's Steuben Street home to execute the search warrant. Defendants claim, and plaintiff denies, that after Stucchi knocked on the front door there was an abnormally long delay before Brown answered. Once she opened the door for Stucchi, the UPD officers followed Stucchi into the home. Jesse admitted to having crack cocaine in the house and showed the officers where the drugs were hidden. The officers searched the rest of the house and found additional drugs that Jesse had not acknowledged. The officers also seized $1886.00 in cash in Jesse's daughter's jacket, which was located in the eight-year-old girl's bedroom. Plaintiff claims this was her money that she earned legitimately and kept in her stepdaughter's jacket to hide it from Jesse, whom she feared would use it for alcohol and/or drugs.

Brown was placed in handcuffs while the officers searched the home. She alleges that the officers destroyed furniture and other personal property during the search. Plaintiff repeatedly requested to use the bathroom, but the officers refused to grant her permission. Instead, Paladino summoned a female officer to the scene to perform a visual body cavity search of plaintiff. When the female officer, Starr Wooden ("Wooden"), arrived at the residence, she led plaintiff to a first-floor bedroom that was separated from the adjoining living room by drapes hung in the doorway. Plaintiff claims that the drapes were not completely closed while Wooden conducted the search. Defendants maintain that the bedroom afforded sufficient privacy, and note that the only person who may have seen plaintiff through the drapes was Jesse.

- 3 -

Wooden first conducted a pat-down search on the outside of Brown's clothing. Plaintiff was then instructed to lift her shirt and bra. Finally, plaintiff was told to take off her pants and underwear, squat, and cough while Wooden visually inspected her private areas. Wooden did not touch plaintiff's naked body. Plaintiff remained compliant with the search, no contraband was found on her person, and she was not arrested or charged with any crime. Jesse was eventually arrested and transported to the police station by UPD officers. Stucchi left the residence shortly thereafter.

Brown filed a notice of claim upon Utica on March 31, 2010, and was deposed pursuant to New York General Municipal Law § 50-h on May 5, 2010. She alleges that UPD officers stopped her vehicle a total of four times in April, July, and August 2010.

On the morning of July 26, 2010, Stucchi and several UPD officers returned to the Brown residence and knocked on the front door.[3] Stucchi asserts that he heard a television inside the home and a toilet flushing repeatedly, but nobody answered the door. Stucchi kicked the door in an effort to get the attention of whomever was inside the residence. He and the officers then left without making contact with anyone inside the home. Thereafter, plaintiff filed a complaint with the UPD accusing Stucchi and the officers of damaging her front door. An internal investigation was conducted, and all involved officers denied causing any damage.

Brown initiated this lawsuit in December 2010. On March 24, 2011, Stucchi went to the home of Bobby and Helen Hawkins, Jesse's grandparents, in Utica. Stucchi claims that the purpose of this visit was to assess whether Jesse, who was incarcerated at the time,

---

[3] Although immaterial to the instant motions, it is noted that this incident took place at plaintiff and Jesse's new residence on Howard Avenue in Utica.

- 4 -

could reside with his grandparents—instead of with plaintiff—upon his release. Stucchi explained that all parolees are subject to unannounced visits to their residences and voiced his concern that executing an unannounced visit at plaintiff's home could cause further problems and allegations. Therefore, Stucchi desired to find an alternative place for Jesse to live while he was on parole. Plaintiff alleges that Stucchi told Mr. and Mrs. Hawkins that he would not allow Jesse to live with her because she had filed this lawsuit against him.

On March 31, 2011, plaintiff's counsel sent a letter to Stucchi's counsel demanding that a different parole officer be assigned to Jesse. Stucchi asserts that he requested to have Jesse's supervision transferred to another parole officer immediately after the March 24 visit to the Hawkins's home, where he first learned that plaintiff and Jesse had married. Stucchi maintains that he made this request before his counsel received the letter from plaintiff's counsel.

## III. DISCUSSION

### A. Summary Judgment—Legal Standard

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (citing Fed. R. Civ. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005).

A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Id. at 250 n.4, 106 S. Ct. at 2511 n.4. The failure to meet this burden warrants denial of the motion. Id. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250, 106 S. Ct. at 2511; Fed. R. Civ. P. 56(e).

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553. Summary judgment is inappropriate "where a review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant]'s favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); see also Anderson, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. Claims Asserted

The amended complaint does not clearly identify Brown's specific claims and only delineates two causes of action. All of plaintiff's federal claims are grouped in the first cause of action, and all of her state claims are in the second cause of action. In response to defendants' motions, Brown lists her federal claims as violations of 42 U.S.C. §§ 1981 and 1985 and violations of the First, Fourth, Fifth, and Fourteenth Amendments, brought pursuant

to § 1983.[4] The only cognizable federal claims are: (1) Fourth Amendment claims related to the January 6, 2010, search of plaintiff's home and body; (2) First Amendment claims of retaliation related to the traffic stops following plaintiff's notice of claim and the threat to prevent plaintiff from living with Jesse due to this lawsuit; (3) a § 1981 discrimination claim; and (4) a § 1985 conspiracy claim.[5]

Brown identifies her state law claims as failure to intervene, intentional infliction of emotional distress, "unlawful seizure of funds, and property destruction."[6] Pl.'s Mem. of Law, Dkt. No. 31-2, 3. The only state claims addressed in plaintiff's motion paperwork are for conversion (related to the seizure of the $1886.00 cash), IIED (related to the visual body cavity search), and for damage to plaintiff's front door allegedly caused by Stucchi on July 26, 2010.

### C. Fourth Amendment Claims

Brown alleges that defendants violated her Fourth Amendment rights by conducting an unreasonable visual body cavity search and damaging her personal property.

---

[4] Omitted are violations of the Eighth and Ninth Amendments that were alleged in the amended complaint. See Am. Compl. ¶¶ 49, 56. However, the facts do not support an Eighth Amendment claim as Brown was not a prisoner, and the Ninth Amendment is not an independent source of individual rights. Jenkins v. C.I.R., 483 F.3d 90, 92 (2d Cir. 2007).

[5] The parties did not address the § 1981 or § 1985 claims in their paperwork or at oral argument. It is noted, however, that there is nothing in the record from which to infer that the defendants intended to discriminate against plaintiff because of her race. See McKnight v. Middleton, 699 F. Supp. 2d 507, 530 (E.D.N.Y. 2010) (dismissing § 1981 claim where plaintiff "failed to plead any non-speculative facts supporting an inference of racial animus, let alone intentional discrimination"), aff'd, 434 F. App'x 32 (2d Cir. 2011). Nor is there anything to indicate a "meeting of the minds" showing an agreement among defendants to violate plaintiff's rights. See Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (dismissing § 1985 claim where plaintiffs did not allege "that any such meeting of the minds occurred among any or all of the defendants"). Therefore, these claims will be dismissed sua sponte.

[6] Omitted are state claims for assault and battery, false arrest/imprisonment, and negligent infliction of emotional distress that were alleged in the amended complaint. See Am. Compl. ¶ 58.

1. <u>**Visual Body Cavity Search**</u>

Defendants argue the visual body cavity search was reasonable and justified by their belief that plaintiff was secreting drugs on her person.

When executing a valid search warrant, law enforcement officers have a "general authority to detain persons and make limited security searches." Rivera v. United States, 928 F.2d 592, 606 (2d Cir. 1991). "[H]owever, there must be probable cause, or at least some degree of particularized suspicion, to justify further searches or seizures of individuals who are neither named in the warrant nor arrested as a consequence of the search." Id.; see also United States v. Bush, No. 5:09-CR-3, 2009 WL 3334518, at *6 (N.D.N.Y. Oct. 14, 2009) (Suddaby, J.) (suggesting "independent probable cause" is required for officers to search occupants of a house who are not specifically listed in the search warrant). Additionally, "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." Ybarra v. Illinois, 444 U.S. 85, 86, 100 S. Ct. 338, 339 (1979).

If a search of a person is found to be justified, it must next be determined if it was conducted in a reasonable manner. When considering the constitutionality of a particular search, courts are to apply a "test of reasonableness" that balances the need for the search against the invasion of privacy. Bell v. Wolfish, 441 U.S. 520, 558–59, 99 S. Ct. 1861, 1884 (1979). Consideration must be given to the scope of the intrusion, the manner and place in which the search is conducted, and the justification for the search. Id. at 559, 99 S. Ct. at 1884.

Even viewing the totality of the evidence in the light most favorable to Brown,

defendants had independent probable cause to believe she had contraband secreted on her person. It is undisputed that a confidential informant had purchased cocaine from Jesse during a monitored controlled buy in the driveway of plaintiff's home less than three hours prior to the execution of the search warrant. Further, narcotics were found in at least two locations in her home during the search, a large amount of cash—which plaintiff claimed belonged to her—was discovered in a child's jacket, and plaintiff immediately and persistently requested to use the bathroom. Plaintiff's requests to use the bathroom constituted an exigent circumstance to justify the search without a specific warrant or her consent. See Burns v. Loranger, 907 F.2d 233, 237–38 (1st Cir. 1990) (facing strikingly similar facts, "no experienced police officer prudently could have ignored the likelihood that [plaintiff's] requests to use the bathroom portended a plot to dispose of incriminating evidence concealed on her person").[7] These facts establish more than plaintiff's mere propinquity to Jesse and constitute probable cause to search her person.

The search was also carried out in a reasonable manner by Wooden, a female officer, in Brown's own bedroom.[8] This room was separated from the adjoining living room, where some male police officers may have been located, by drapes that hung in the doorway. Plaintiff claims, and Wooden disputes, that the drapes were not closed completely during the

---

[7] Defendants do not attempt to base the legality of the visual body cavity search on the search warrant alone. Indeed, "the issuance of a warrant authorizing a search of the premises and persons located therein does not automatically authorize the officers executing the warrant to perform strip or cavity searches (either visual or invasive) on the persons located on the premises." Bolden v. Village of Monticello, 344 F. Supp. 2d 407, 419 (S.D.N.Y. 2004). However, the valid search warrant coupled with the above noted circumstances provided sufficient justification for the visual body cavity search.

[8] Wooden, who arguably had the most control over the manner in which the search was conducted, is not a defendant in this case.

- 9 -

search, permitting someone from the living room to see into the bedroom. In her deposition, however, plaintiff acknowledged that the only person she saw through the crack in the drapes was her then-fiance and current husband, Jesse. Further, there is nothing in the record suggesting any officers, save Wooden, actually saw plaintiff during the search. Finally, other than an initial pat-down frisk on the outside of plaintiff's clothing, Wooden never touched plaintiff or used any force during the search.

In short, the visual body cavity search of Brown was justified by independent probable cause and was carried out in a reasonable manner. Therefore, defendants' motions for summary judgment on this Fourth Amendment claim will be granted.

### 2. Property Damage[9]

Brown alleges that defendants damaged her dresser, entertainment center, an interior door, a picture frame, a glass table, and baseboard radiators during the execution of the search warrant and maliciously left the home in disarray with personal items and garbage strewn about. Defendants deny intentionally or maliciously damaging any of these items.

It is well established that "officers executing search warrants on occasion must damage property in order to perform their duty." Cody v. Mello, 59 F.3d 13, 16 (2d Cir. 1995) (internal quotation marks omitted). "Before any due process liability can be imposed for property damage occurring in a lawful search, it must be established that the police acted unreasonably or maliciously in bringing about the damage." Id.

---

[9] Only the alleged property damage related to the January 6, 2010, search warrant execution can support a federal cause of action. The damage to plaintiff's front door, allegedly caused by Stucchi on July 26, 2010, is unrelated to any Fourth Amendment search/seizure or civil rights violation. Also, plaintiff did not submit any photographs of the alleged damage to support such a claim. Stucchi concedes that this claim can be brought as a state tort claim.

In support of this claim, Brown has attached numerous photographs of her home. See Cafruny Affirmation, Feb. 14, 2012, Ex. I. Plaintiff reportedly took these pictures after the officers left her home on January 6, 2010. The "destruction" depicted in the pictures includes a cracked glass cabinet door, a closet door off its hinges, garbage strewn outside the home, clothing scattered on the floor inside the home, a radiator with its metal covering removed, and what appears to be a broken mirror or glass picture frame. However, the scene depicted in these images falls far short of establishing that defendants acted unreasonably or maliciously.

Although Jesse showed Stucchi one of the locations in which he hid narcotics, it is undisputed that the officers found additional drugs elsewhere in the home. This fact, coupled with the earlier controlled purchase of cocaine at the residence and the valid search warrant, justified an aggressive search of the home. The officers cannot be faulted for removing clothing from drawers and closets or opening and inspecting full garbage bags. See Dockery v. Tucker, No. 97-CV-3584, 2008 WL 2673307, at *10 (E.D.N.Y. June 26, 2008) ("[I]t is settled that some disarray in conducting a search, including tangential destruction of items that could not contain the object of the search, does not state a claim of constitutional magnitude."). Moreover, the amount of damage to personal items and furniture was minimal. Indeed, at oral argument plaintiff's attorney estimated that less than $1000 worth of damage was done.[10]

In short, no rational trier of fact could conclude, even viewing the evidence in the light most favorable to plaintiff, that defendants acted unreasonably or maliciously when executing

---

[10] After carefully reviewing the photographs, this figure seems greatly inflated.

the search warrant on January 6, 2010. Accordingly, defendants' motions for summary judgment will be granted on this claim as well.

### 3. Qualified Immunity of Paladino

Even if defendants' conduct on January 6, 2010, arguably violated plaintiff's clearly established right to be free from unreasonable searches, defendant Paladino is entitled to qualified immunity. Police officers are immune from suit if it was objectively reasonable for them to believe their conduct did not violate clearly established constitutional rights. Lennon v. Miller, 66 F.3d 416, 418 (2d Cir. 1995). Objective reasonableness exists "where officers of reasonable competence could disagree as to the legality of the defendant's actions." Bolden, 344 F. Supp. 2d at 410 (internal quotation marks omitted).

As noted above, it is undisputed that Jesse had sold cocaine to a confidential informant at the residence within three hours of the search warrant execution. The search of the home yielded drugs in separate locations and a substantial quantity of U.S. currency that Brown claimed belonged to her. At the same time plaintiff repeatedly requested to use the bathroom. Taken together, these facts could lead officers of reasonable competence to believe plaintiff was secreting drugs on her person, thereby justifying a legal visual body cavity search. See, e.g., Howard v. Schoberle, 907 F. Supp. 671, 682 (S.D.N.Y. 1995) (denying qualified immunity where defendant officers strip searched plaintiff before drugs were found in the residence but suggesting officers would have been immune if the drugs had been found first).

Moreover, the search of plaintiff's home was conducted pursuant to a valid search warrant. As explained above, the damage and disarray depicted in the photographs of

Brown's home is neither unreasonable nor indicative of malicious conduct. Any actual damage caused to plaintiff's personal belongings was minimal and reasonable officers would agree.

Accordingly, defendant Paladino is entitled to qualified immunity for all claims related to the execution of the search warrant on January 6, 2010.

### 4. Personal Involvement of Stucchi

Even if any of the claims relating to the January 6, 2010, search of plaintiff's home and person survived summary judgment, defendant Stucchi cannot be held liable because he was not personally involved in the conduct that allegedly violated Brown's civil rights on that date. Plaintiff acknowledges that Stucchi did not order or conduct the visual body cavity search or damage her property. She instead alleges that he failed to intervene when other officers engaged in conduct that violated her civil rights.

The personal involvement of a defendant is an essential element of a § 1983 claim. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). The personal involvement of police officers encompasses an "affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). In order to be held liable, an officer must have a "realistic opportunity to intervene to prevent the harm from occurring." Id. "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." Id.

Assuming defendant Stucchi knew a visual body cavity search was to be conducted

and observed the property being damaged, he did not have a realistic opportunity to intervene. It is undisputed that Stucchi had no involvement in obtaining the search warrant, no input on how it was to be executed, and remained focused on Jesse on January 6, 2010. Paladino testified that Stucchi was merely the UPD's "ticket in" the Brown residence. Cafruny Affirmation, Feb. 14, 2012, Ex. G, 70:4–5. Paladino and the UPD officers completely controlled the execution of the search warrant and ordered plaintiff to be searched. Stucchi—a state parole officer—had no authority over the UPD officers and, therefore, could not have realistically prevented them from violating plaintiff's constitutional rights. Further, as explained above, the allegedly violative conduct was not so egregious or malicious as to prompt a parole officer, who had absolutely no authority over the involved police officers, to stop the execution of a valid search warrant. No reasonable jury could conclude otherwise.

Therefore, the causes of action against defendant Stucchi relating to the January 6, 2010, execution of the search warrant and search of plaintiff's person also fail for lack of personal involvement.

### D. First Amendment Retaliation Claims

To prevail on a First Amendment retaliation claim against public officials, a private plaintiff must show that: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).

1. <u>Traffic Stops</u>

Brown alleges that UPD officers stopped her vehicle a total of four times in April, July, and August 2010 in retaliation for the notice of claim she filed on March 31, 2010. However, in her deposition she could only remember the first of these traffic stops in which she received a citation for playing loud music in her car. Plaintiff could not name which UPD officer issued this ticket. There is nothing in the record to suggest that Paladino or Stucchi was involved in these traffic stops. Nor is there any indication that the officers who actually conducted the traffic stops were aware that plaintiff had filed a notice of claim, much less that they were motivated by such a filing. Therefore, her retaliation claim related to the traffic stops is entirely conclusory and will be dismissed.

2. <u>Plaintiff and Jesse's Living Arrangement</u>

Plaintiff filed this action in December 2010. On March 24, 2011, Stucchi allegedly threatened to prevent plaintiff from living with Jesse upon his release from prison because of this lawsuit.

It is undisputed that the filing of a lawsuit is protected speech. <u>See</u> <u>Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals</u>, 282 F.3d 83, 91 (2d Cir. 2002) ("The rights to complain to public officials and to seek administrative and judicial relief from their actions are protected by the First Amendment."). Stucchi acknowledges telling Jesse's grandparents that he would not allow Jesse and plaintiff to live together because of plaintiff's lawsuit against him. Cafruny Affirmation, Feb. 14, 2012, Ex. F, 29:7–9. Viewing this statement in the light most favorable to Brown, it arguably establishes the second prong.

However, plaintiff cannot establish the final prong because Stucchi was replaced as

Jesse's parole officer, never took any action to actually prevent plaintiff and Jesse from co-habitating, and did not cause her to alter her behavior whatsoever. There is nothing in the record indicating that plaintiff and Jesse were ever prevented from living together. Indeed, plaintiff testified at her deposition that Jesse remains on parole and that she and Jesse are currently residing in the same home. Further, there is nothing to suggest Stucchi's threat was made in an effort to persuade plaintiff to drop the lawsuit, or that it effectively chilled her speech or prevented her from prosecuting this action. See Curley, 268 F.3d at 73 ("Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech.").

In fact, there is nothing from which to reasonably infer that this "threat" was anything other than a reasonable attempt by Stucchi to minimize further confrontation with plaintiff. See Tuccio v. Marconi, 589 F.3d 538, 541 (2d Cir. 2009) ("The mere fact that a government official takes such reasonable precautions, notwithstanding that the official would not have taken them if the counterparty had not been a litigation adversary, does not make such actions unconstitutional retaliation, especially when they cause no harm to the adversary.").

Accordingly, defendant Stucchi will be granted summary judgment on this retaliation claim.

### E. Remaining State Law Claims

As all of the federal claims will be dismissed, the only claims that remain are the state law claims. Pursuant to 28 U.S.C. § 1367(c)(3), supplemental jurisdiction over any remaining state claims is declined.

## IV. CONCLUSION

The totality of the circumstances defendants faced while executing a valid search warrant at Jesse and plaintiff's home on January 6, 2010, provided probable cause to believe plaintiff was secreting drugs on her person. The visual body cavity search of plaintiff's person was justified and was conducted in a reasonable fashion by a female officer in a separate room that afforded sufficient privacy. The damage done to plaintiff's personal belongings during the execution of the search warrant was minimal and does not indicate that defendants acted unreasonably or maliciously. Further, defendant Paladino is entitled to qualified immunity for all claims related to the execution of the search warrant. All claims against defendant Stucchi related to the January 6, 2010, search warrant execution also fail for lack of personal involvement.

The retaliation claims related to the traffic stops are completely conclusory and do not personally involve either of the named defendants. Similarly, the retaliation claim concerning defendant Stucchi's threat to prevent plaintiff from living with Jesse fails because they were never actually prevented from co-habitating and plaintiff's speech was never chilled.

Therefore, it is

ORDERED that

1. Defendants' motions for summary judgment are GRANTED;

2. All federal causes of action are DISMISSED with prejudice;

3. Supplemental jurisdiction over the remaining state law causes of action is declined,

and these claims are DISMISSED without prejudice; and

    4. The amended complaint is DISMISSED in its entirety.

IT IS SO ORDERED.

The Clerk of the Court is directed to enter judgment accordingly and close the file.

                                                                                United States District Judge

Dated: April 12, 2012
       Utica, New York.